C. J. McCONVILLE v. CITY OF ST. PAUL.

January 27, 1899.

Nos. 11,446—(229).

| 75 | 383 |
| 79 | 10 |
| d79 | 11 |
| 79 | 12 |
| d76 | 13 |
| a79 | 33 |
| f79 | 34 |
| 75 | 383 |
| 86 | 100 |

**Municipal Corporation—Grading of Street—Abandonment of Improvement—Recovery of Assessment.**

In 1891 the city of St. Paul instituted proceedings for opening, widening and extending East Third street therein, and made assessments on abutting property for such purpose. The improvement was partly made, and plaintiff, who owned several abutting lots, was assessed thereon, and by judicial proceedings compelled to pay $1,294.43 to said city. His lots were not benefited by said grading, and the contemplated work and improvement of said street were abandoned by the city in June, 1893. This action was commenced in January, 1898. *Held,* that the finding of the trial court that the work on said street, and the projected improvement thereon, were never completed, and were wholly abandoned by the city, was justified by the evidence, and that plaintiff is entitled to recover from said city the amount so paid by him, as upon a failure of consideration.

Action in the district court for Ramsey county to recover the amount of an assessment paid by plaintiff. The court, O. B. Lewis, J., found in favor of plaintiff; and from an order denying a motion for a new trial, defendant appealed. Affirmed.

*James E. Markham* and *Carl Taylor,* for appellant.

The evidence does not show that the improvement of East Third street was abandoned, so as to bring the case within Valentine v. City of St. Paul, 34 Minn. 446. The finding that the improvement was abandoned is not sustained, either by the rescission or abandonment of the contract, or by the resolution of the common council, or by the lapse of time. Plaintiff's remedy is by mandamus to compel the board of public works to proceed with the improvement. The measure of damages should have been plaintiff's proportion of the cost of completing the work.

*Ambrose Tighe* and *John W. Lane,* for respondent.

BUCK, J.

In January, 1891, the defendant instituted proceedings for opening, widening and extending East Third street, in the city of St. Paul, from White Bear avenue to the eastern boundary line of said city, a distance of one mile, across section 35, township 29, range 22, in Ramsey county, in this state. This property was then owned by one David J. Hennessy, who opposed such proceedings. The board of public works of said city confirmed the proceedings, and Hennessy appealed to the district court. On June 16, 1891, the common council of the defendant duly established the grade of said East Third street from Earl street to White Bear avenue, a distance of one mile and a half, and on September 22, 1891, established the grade of said East Third street from White Bear avenue to the east city limits. This last-described grade of one mile so ordered was on the land of Hennessy; the city having given a bond of indemnity to him, in order that it might proceed with the condemnation of said land, and grade the same. Prior to the spring of 1891 East Third street had been graded as far east as Earl street. In March, 1892, the contract for the improvement was let at the price of $47,000, and an assessment levied to cover it and the attendant expenses. About $21,000 of this assessment was levied on the Hennessy farm, and $28,000 was divided among the lots fronting on the other mile and a half of street to be graded.

The plaintiff owned 14 lots. One of the lots was assessed $201; 12, $80.50 each; and one, $76.50. On August 24, 1892, the plaintiff paid $1,294.43 into the city treasury, and the city ever since has had, and still has, his money. The work, as a consideration for which it was paid, was begun and continued at intervals until June, 1893. In 1893 the defendant city council passed the following resolution:

"Resolved, that all proceedings heretofore had for the opening, widening and extension of East Third street from White Bear avenue to the east city limits be, and the same are hereby, in all things annulled, and that all proceedings had for the condemnation of an easement for slopes along the line of East Third street from White Bear avenue to the east city limits be, and the same are, in all things annulled. Resolved, further, that the corporation attorney be, and he is hereby, authorized to stipulate for judgment in the action pending in the United States circuit court, wherein David

J. Hennessy is the complainant and the city of St. Paul and Thomas Keough and Daniel Donnelly are defendants, that judgment be entered that the condemnation proceedings heretofore had for the opening of East Third street across section 35, town 29 north, range 23 west, be declared null and void, and the condemnation proceedings had for the acquiring of an easement for slopes across said section on the property abutting on the line of East Third street be also declared null and void, and that the assessment made against said section for the grading of East Third street be set aside and declared null and void, and that the defendants in said suit have no right to enter or do any work upon said section under the contract heretofore entered into between the city of St. Paul and Thomas Keough and Daniel Donnelly; and the corporation attorney is also authorized to stipulate for proper judgment in the appeal cases of David J. Hennessy against the city of St. Paul from the confirmation of the assessments for the opening of East Third street, and also from the confirmation of the assessment for the acquiring of an easement for slopes along the line of East Third street."

Upon the trial the defendant also admitted that prior to October 1, 1893, the contract for doing the work of grading on East Third street from Earl street to the east city limits was rescinded by the city. In its answer the defendant says (referring to Hennessy's objection to the assessment upon his land) that

"Thereafter such proceedings were had in this court that an order and judgment were entered in said cause so appealed to this court by said Hennessy, in all things annulling the assessment as made by said board of public works, in so far as it related to said real estate designated as section 35 aforesaid."

The trial court found as a fact,

"That the defendant has, through its said contractors, done some work on said street east of said Clarence street; but has never completed said street east of said point so that it is capable of being traversed either by teams or foot passengers; that in June, 1893, the defendant ceased entirely work on said street, wholly abandoned said projected improvement, and has never completed the same east of said Clarence street; that the plaintiff's said property is situated between Bock and Kennard streets, which are to the east of Clarence street, and that the nearest of plaintiff's said lots to Clarence street is about one-half mile east of said Clarence street; that between said Clarence street and the first of plaintiff's said lots next east thereof are two deep holes, and that access to plaintiff's property cannot be had over said Third street as the same has been left

75 M.—25

by the defendant; that, had said improvement been completed as projected, access to plaintiff's said property from the center of St. Paul and to the east city limits would have been secured therefrom, and said property would have been benefited thereby to the amount of the assessment imposed as aforesaid, to wit, in the sum of twelve hundred and thirty-three dollars and fifty cents ($1,233.50); that the grading of said street to the extent actually done is not, and at no time has been, of any benefit whatsoever to the plaintiff's said property; that the allegations of the pleadings, save as hereinbefore found, are not sustained by the evidence."

The court found as conclusion of law that plaintiff was entitled to recover from the defendant the sum of $1,294.43, and legal interest from August 24, 1892. From an order denying a motion for a new trial, the defendant appeals.

The defendant contends that the evidence does not sustain the finding of the trial court that the improvement of East Third street was abandoned by it. We are of the opinion that this contention is not well founded. There is no claim made in defendant's answer, and none was made on the trial, or on the argument in this court, that defendant wishes, desires or ever intends to grade, widen or improve said Earl street, or the proposed street over the Hennessy land. In fact, no substantial proceedings were ever instituted by the defendant with a view to further carrying on the original proceedings instituted in January, 1891. It is true, the city council, after plaintiff had remonstrated with it on account of its delay in the matter, directed the board of public works to investigate the feasibility of completing the grading of East Third street, not from Clarence street to the east city limits, as contemplated by the original petition, but to White Bear avenue, which is a mile west of the east city limits, and even this proceeding was substantially abandoned; and the plaintiff, fearing that an action for his claim for the money so paid to the defendant would be barred by the statute of limitations, brought this action January 31, 1898.

The evidence is quite conclusive that the plaintiff's lots have not been benefited by the grading, or any acts done under the proceedings instituted by the city for such purpose. The city, by judicial proceedings, compelled him to pay to it the full amount of the

assessment; and, with commendable forbearance, he waited nearly six years for the city to complete its work after obtaining his money in August, 1892, which it keeps without the slightest evidence of its intent to complete its work of grading and improving the street named. If it intends to complete this work, it should do so or say so. We do not approve of a great and wealthy city remaining passive, inactive, and its officers silent, upon such matters of public concern, for so long a period, to the great injury of one of its citizens, especially without signifying its intent to proceed with the projected improvement. He had a right to elect to have them act promptly, and determine whether they would abandon or not. Mills, in his work on Eminent Domain (312), says that there should be no unreasonable delay in determining whether or not the proceedings shall be abandoned, and that the public must be held to a speedy and prompt termination of the proceedings. It is to be noted that this is not a case of attempting to condemn and appropriate land for city purposes where the city takes and keeps possession of the property, and has not paid the damages, and where possession would be evidence that it had not abandoned the undertaking.

It is evident that the undertaking was an unwise one, and the expense entirely beyond the resulting benefits to all the property involved; the delay of six years is prima facie evidence that the improvements were unnecessary, and doubtless justified the city in abandoning the work. Lewis, in his work on Eminent Domain (section 657), says:

"In most of the cases which have arisen, the intention to abandon has been manifested by affirmative acts. But this intention may be manifested in other ways. Where a statute required the final order establishing a highway to be filed with the town clerk within ten days from its date, a failure to do so was held to constitute an abandonment of the proceedings. Where a motion to accept an award was made and lost in a county board, it was held to amount to a vote to abandon. The failure to pay the damages within a reasonable time after their final determination will itself constitute an abandonment of any right to take the property under the proceedings had. What will constitute a reasonable time must, of course, depend upon circumstances. Four years has been held to be an unreasonable delay, constituting an abandonment; and in the

same case it is said that after one year, no offer to pay having been made, the assessment would become functus officio."

We are of the opinion that the facts in the case fully justify and sustain the findings of the trial court that the defendant city had abandoned the grading of East Third street as contemplated in the proceedings under which the assessment was made and levied, and that, as the plaintiff has received no benefit or consideration for the money paid by him to the city by coercion of law, he can maintain this action to recover it. Valentine v. City of St. Paul, 34 Minn. 446, 26 N. W. 457. This being so, it is not necessary for us to consider the question as to whether the plaintiff has a remedy by mandamus to compel the board of public works to proceed with the improvement. If he had such a remedy, it was not an exclusive one.

The appellant claims that the rule laid down by this court in the case of Strickland v. City of Stillwater, 63 Minn. 43, 65 N. W. 131, is not applicable to the case at bar, or that, if it is, it should not be adhered to. In that case the city adopted a general plan for grading parts of the several streets, which included that part of a street in front of Strickland's lots, and extending beyond the same in each direction. The assessment included her property, and all other property benefited by such grading, although not abutting on the improvement. Part of the contemplated grading was done, but none in front of her property, and the street was graded nearly up to her property. The city abandoned doing any further work, although she had paid the full amount of her assessment for making the entire improvement; and she sued the city for the sum so assessed and paid, and recovered judgment for the full amount, upon the ground that her property had been assessed upon the basis of frontage, and, no grading having been done on the street in front of her abutting property, she was entitled to recover the whole sum paid by her as benefits. This court held that this was error, but that as her property was so assessed, and it having been done in pursuance of a general plan which included an assessment upon all property benefited by such improvement within the limits of such plan, she might have been benefited by such grading done in part, although none of it was done directly in front of her property,

and, if so, her property was liable for the amount of such benefit, whatever it might be, and that whatever sum she was entitled to receive, if any, would be the difference between the actual benefits added to her property by the grading as an entirety, so far as done, and the sum which she was compelled to pay to said city of Stillwater.

We think this rule a sound and equitable one, protecting the rights of the citizen, and imposing a duty upon the municipality to perform its obligations. The principle upon which that case rested is applicable to the one at bar; that case differing from this only in the fact that in the Strickland case the plaintiff received some benefit from the partial performance of the improvement, and in this the plaintiff received none. The counsel for the appellant contend that, if the rule in the Strickland case is to be adopted as the law of this state, some peculiar situations will result. Any such conditions can be easily avoided by municipal corporations fully, completely and honestly performing their duties and obligations, and not sheltering their defaults behind the plea of non-accountability. The doctrine in the Strickland case is adhered to. Our conclusion is that the plaintiff is entitled to recover in this action from the defendant city the amount so paid it by him, with interest, as upon failure of consideration.

Order affirmed.

CANTY, J. (dissenting).

I cannot concur. The majority assume that they are following Strickland v. City of Stillwater, 63 Minn. 43, 65 N. W. 131, but the facts in that case were wholly different. There it was not claimed that any money was squandered or spent foolishly. Every dollar expended returned a full dollar's benefit to the property holders, but the city in fact abandoned a part of the improvement district and a part of the improvement. That action was brought on the theory that the plaintiff's property was wholly without the limits of any assessment district which the city authorities were warranted in carving out for the purpose of assessing thereon the cost of the improvements as actually made. We held that the property was not outside such an assessment district, but that as the assess-

ment district was in fact changed by the abandonment of the improvements in a part of it, and the improvements also changed, the court or the jury must in this action make a new assessment to meet these new conditions, and determine the amount of benefit to plaintiff's property and award him the balance assessed against the property.

Here the plaintiff is not outside of the assessment district, or on the edge of it, where his assessment should be lighter, but he is in the very midst of it; and it is not claimed that the change made in the district by the abandonment of the improvement of the street through the Hennessy tract before any improvement was made in that part of the street could in any event make the assessment against plaintiff's property any the less. But this action is brought upon the theory that when a special tax is levied on property specially benefited by an improvement, to defray the cost of making that improvement, and the money is spent in the improvement, but the city does not complete the same, and it turns out, in the light of subsequent events and subsequent experiences, that the improvement was an injudicious undertaking, the taxpayer can recover from the city the money thus injudiciously spent in the abortive enterprise. On the same principle, if a general tax of, say, five mills on the dollar, was levied to build a court house, and the money was all spent in building a court house on such a foolish plan that before it was completed it fell down and became a total wreck, any taxpayer who paid his part of the tax could immediately recover it from the county.

There is no difference in this respect between a special tax on property specially benefited and a general tax on all the property in the city or county. Each is levied by the same sovereign power. That power acts in its sovereign capacity, not in its private or contractual capacity, in levying such a tax, and therefore is not liable for the failure of the tax to bring any benefit to him who pays it. True, the special tax is levied on the supposition that the party paying it is benefited to an amount equal to the amount of the tax. But the question of whether he is or will be thus benefited is tried at the time the assessment is made, and cannot be subsequently reviewed in an action brought to recover the tax after it is paid,

merely because the improvement was injudiciously undertaken. Of course, where the assessment district and the improvements are changed after the tax is levied and collected, so that one taxpayer has paid more than his share, he may recover the excess. Such was the Strickland case. But here he is allowed to recover taxes collected and squandered in the construction of abortive improvements. A part of the tax so collected has not been expended, and I concede that plaintiff may recover such part; but the tax was not collected with an implied warranty that it would bring to the taxpayer the benefit contemplated, and for the portion of it which has been spent he has, in my opinion, no claim against the city.